# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| BANK OF AMERICA, N.A., | ) |
| Plaintiff, | ) ) ) |
| vs. | Case No. 4:14-cv-809 ) ) |
| MAGRUDER CONSTRUCTION CO., INC., | ) ) ) |
| Serve:  Registered Agent Teresa Blazer<br>243 W. Outer Road<br>Eolia, MO 63344 | ) ) ) ) ) |
| Defendant. | ) |

## VERIFIED COMPLAINT

Plaintiff, Bank of America, N.A., by and through its undersigned counsel, for its cause of action against Defendant Magruder Construction Co., Inc., states as follows:

## PARTIES

1. Plaintiff, Bank of America, N.A. ("Plaintiff") is a national financial institution with its principal place of business located in Charlotte, North Carolina.

2. Defendant Magruder Construction Co., Inc. ("Defendant") is a Missouri corporation, with its principal place of business in Pike County, Missouri.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties and the amount in controversy for damages alleged below exceeds $75,000.00.

4. This Court has personal jurisdiction over Defendant in that Defendant has entered into contracts in the State of Missouri, has transacted business in the State of Missouri, and has its principal place of business in the State of Missouri.

21651027v1

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that Defendant resides in this judicial district.

## COUNT I- BREACH OF LOAN AGREEMENT

6.      Plaintiff realleges each and every allegation contained in paragraphs 1 through 5 above, as though fully set forth herein.

7.      On December 28, 2012, Defendant executed and delivered to Plaintiff a Loan Agreement ("Loan Agreement") evidencing a line of credit to Defendant in the principal amount of $750,000.00 ("Revolving Line of Credit Loan"), a term loan in the principal amount of $2,500,000.00 ("Term Loan"), and a line of credit in the amount of $2,000,000.00 ("Equipment Line of Credit Loan") (the Revolving Line of Credit Loan, Term Loan and Equipment Line of Credit Loan are collectively referred to herein as the "Loans").  A true and accurate copy of the Loan Agreement is attached hereto and incorporated herein by reference as **Exhibit 1**.

8.      Pursuant to Section 5.1 of the Loan Agreement, Defendant's obligations under the Loan Agreement are secured by Defendant's "(a) Equipment (b) Receivables (c) the ESOP Note and ESOP Share pursuant to the ESOP Collateral  Assignment (d) Securities or other investment . . . (e) Substantially of the [Defendant's] other personal property" and "all personal property collateral securing any other present or future obligations of' Defendant to Plaintiff.

9.      In conjunction with the Loan Agreement, on December 28, 2012, Defendant executed and delivered to Plaintiff a Security Agreement ("Security Agreement") evidencing Plaintiff's first priority and perfected security interest in certain collateral of Defendant. A true and accurate copy of the Security Agreement is attached hereto and incorporated herein by reference as **Exhibit 2**.

10. Pursuant to Section 1(c) of the Security Agreement, Plaintiff holds a first priority and perfected security interest in the Collateral (as defined under the Security Agreement) for the Loan Agreement, including, but not limited to "[a]ll machinery . . . and other equipment of every type now owned or hereafter acquired by the [Defendant]".

11. On April 8, 2014, an "Inspection and 'Desktop' Appraisal" of Defendant's machinery and equipment was completed ("Appraisal"). A true and accurate copy of the Appraisal is attached hereto and incorporated herein by reference as **Exhibit 3**.

12. The Appraisal describes the Collateral secured for Plaintiff by the Loan Agreement and Security Agreement.

13. Plaintiff has performed all conditions precedent to enforcement of the Loan Agreement and Security Agreement.

**Revolving Line of Credit Default**

14. Pursuant to Section 1.2 of the Loan Agreement, the Revolving Line of Credit Loan matured on December 31, 2013.

15. The Revolving Line of Credit was not renewed and all amounts outstanding under the Revolving Line of Credit Loan were due to Lender on December 31, 2013.

16. As of April 25, 2014, there was $750,000.00 in principal due and owing to Plaintiff on the Revolving Line of Credit Loan.

17. Defendant has failed to pay the full amount outstanding under the Revolving Line of Credit Loan constituting a breach of Section 1.4(b) of the Loan Agreement and a default under Section 11.1 of the Loan Agreement.

18. Defendant was notified by Plaintiff of the foregoing breach and default, and the entire indebtedness on the Revolving Line of Credit is accelerated and now past due and owing under the Loan Documents.

19. The Revolving Line of Credit default is still in existence and not cured.

### Borrowing Base Default

20. Pursuant to Section 1.1(c) of the Loan Agreement, Defendant agreed that it would not:

> "…permit the principal amount of all loans outstanding under the Line of Credit Commitment to exceed the lesser of the Line of Credit Commitment or the Borrowing Base" and "if the loans outstanding under the Line of Credit Commitment exceed this limit, the Borrower will immediately pay the excess to the [Plaintiff] upon the [Plaintiff's] demand".

21. On March 26, 2014, Plaintiff received Defendant's "Monthly Collateral Report and Borrowing Base Certificate" for the month ending on February 28, 2014, that showed Defendant permitted the principal amount of the Revolving Line of Credit Loan to exceed the Borrowing Base (as defined in Exhibit A to the Loan Agreement), and a deficit position of approximately $80,434.00.

22. As of April 25, 2014, there was $1,720,000.00 in principal due and owing to Plaintiff on the Term Loan.

23. Defendant has failed to pay the excess to Plaintiff upon Plaintiff's demand constituting a breach of Section 1.1(c) of the Loan Agreement and a default under Section 11.3 of the Loan Agreement.

24. Defendant was notified by Plaintiff of the foregoing breach and default, and the entire indebtedness on the Term Loan is accelerated and now past due and owing under the Loan Documents.

4

21651027v1

25. The Borrowing Base default is still in existence and not cured.

**<u>Fixed Charge Coverage Ratio Default</u>**

26. Pursuant to Section 9.21 of the Loan Agreement, Defendant agreed that it would "maintain on a consolidated basis a Fixed Charge Coverage Ratio of at least" <u>1.25</u> to <u>1.0</u>, as of the end of each fiscal quarter commencing March 31, 2013 and through December 31, 2013, and as of the end of each fiscal quarter commencing March 31, 2014 and thereafter.

27. Defendant prepared and provided Plaintiff with financial statements showing a Fixed Charge Coverage Ratio (as defined in Exhibit A to the Loan Agreement), that fell below <u>1.25</u> to <u>1.0</u> constituting a breach of Section 9.21 of the Loan Agreement and a default under Section 11.2 of the Loan Agreement.

28. Defendant was notified by Plaintiff of the foregoing breach and default, and the entire indebtedness is accelerated and now past due and owing under the Loan Documents.

29. The Fixed Charge Coverage Ratio default is still in existence and not cured.

**<u>Senior Funded Debt to EBITDAE Ratio Default</u>**

30. Pursuant to Section 9.20 of the Loan Agreement, Defendant agreed that it would "maintain on a consolidated basis a ratio of Senior Funded Debt to EBITDAE" not exceeding <u>2.5</u> to <u>1.0</u>, as of the end of each fiscal quarter commencing March 31, 2013 and through December 31, 2013, and as of the end of each fiscal quarter commencing March 31, 2014 and thereafter.

31. Defendant prepared and provided Plaintiff with financial statements showing that Defendant's Senior Funded Debt (as defined in Exhibit A to the Loan Agreement), to EBITDAE (as defined in Exhibit A to the Loan Agreement), ratio exceeds <u>2.5</u> to <u>1.0</u>, constituting a breach of Section 9.20 of the Loan Agreement and a default under Section 11.2 of the Loan Agreement.

21651027v1

32. Defendant was notified by Plaintiff of the foregoing breach and default, and the entire indebtedness is accelerated and now past due and owing under the Loan Documents.

33. The Senior Funded Debt to EBITDAE Ratio default is still in existence and not cured.

### Weekly Cash Budget Report Default

34. Pursuant to Section 9.2 of the Loan Agreement, Defendant is required to provide Plaintiff with "financial information and statements in form and content acceptable to [Plaintiff] … as reasonably requested by [Plaintiff]".

35. On April 11, 2014, Plaintiff requested that Defendant provide a cash budget report to Plaintiff on a weekly basis. Specifically, Plaintiff sent Defendant a form cash budget spreadsheet for Defendant to complete and then send back to Plaintiff on a weekly basis.

36. Defendant has not provided the completed spreadsheets to Plaintiff constituting a breach of Section 9.2 of the Loan Agreement and a default under Section 11.2 of the Loan Agreement.

37. Defendant was notified by Plaintiff of the foregoing breach and default, and the entire indebtedness is accelerated and now past due and owing under the Loan Documents.

38. The Weekly Cash Budget Report default is still in existence and not cured.

### Transfers Between ESOP, ESOT, Defendant and Shareholders

39. Plaintiff made the Loans to Defendant, and a portion of the funds were used by Defendant to make a loan to the Employee Stock Ownership Plan ("ESOP") for Defendant. The ESOP uses funds that it receives from Defendant to make its loan payments to Defendant.

40. The Shareholders of Defendant also made a loan to the ESOP, which money is used to make loan payments to the Shareholders of Defendant.

6

41. Pursuant to Section 1 of the Collateral Assignment of ESOP Transaction Documents, in the event that Defendant is in default under the Loan Agreement, Plaintiff has the power to "make claim for, enforce, perform, collect and receive any and all rights and income under the Assigned Collateral [ESOP]…and to do any and all other things whatsoever which Debtor [Defendant] is or may become entitled to do under the Assigned Collateral [ESOP]."

42. Pursuant to Section 9.19(a) of the Loan Agreement and Section 14(a) of the Subordination Agreement (a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit 4**), in the event that Defendant is in default under the Loan Agreement, Defendant is precluded from making any contributions to the ESOP and the Employee Stock Ownership Trust ("ESOT") is precluded from making any payments to the Shareholders of Defendant on the Seller Notes.

43. Pursuant to Section 9.19(e) of the Loan Agreement, in the event that Defendant is in default under the Loan Agreement, the ESOP is precluded from making any loan payments to Defendant.

## Additional Threatened Breaches

44. Defendant has threatened Plaintiff with the intention to sell certain Collateral of Plaintiff's to a third party in an effort to meet its current payroll needs.

45. Defendant has informed Plaintiff that Defendant and a third party have agreed to a sale price and other terms to sell certain Collateral.

46. Specifically, Defendant had informed Plaintiff that it has a buyer for the Manitonoc Model W10000 100 – Ton Crawler Crane (Item #47 on the Appraisal) with a FMV of approximately $415,000.00, the largest single piece of collateral and a substantial portion of the total Collateral, but has not provided the name of the proposed buyer.  Philip Gali, CEO of

Defendant, has threatened that if Plaintiff does not release its first priority and perfected security interest in that collateral, Plaintiff will be held liable for the consequences.

47. Upon information and belief, the financial condition of Defendant has continued to deteriorate putting both Defendant's viability and Plaintiff's Collateral at an immediate and substantial risk of being lost.

48. In addition, Plaintiff has requested Defendant's cooperation in allowing Plaintiff to conduct a field visit of Defendant's business in order to identify the location of Plaintiff's Collateral and ensure the property has not been sold or otherwise disposed of, and Defendant has refused to cooperate, leading Plaintiff to believe the Collateral is being hidden by Defendant and is in danger of being sold.

49. Plaintiff is legitimately fearful that its Collateral has been, is, and will continue to be consumed, used or dissipated without the appointment of a receiver especially in light of the mobility of the items of Collateral.

50. Because of Defendant's threats to sell certain Collateral in order to satisfy Defendant's payroll needs, there is threat of immediate and irreparable injury, loss, or damage to Plaintiff's Collateral prior to Defendant being heard in opposition to this Motion.

**Damages**

51. Pursuant to Sections 11 and 12 of the Loan Agreement, Plaintiff may accelerate and declare all of the indebtedness under the Loan Agreement immediately due and payable upon default.

52. The total principal balance due from Defendant under the Revolving Line of Credit is $750,000.00. Additionally, there is due and owing under the Revolving Line of Credit

8

interest in the amount of $5,520.42 as of April 25, 2014, together with interest from and after April 25, 2014.

53. The total principal balance due from Defendant under the Term Loan is $1,720,000.00. Additionally, there is due and owing under the Term Loan interest in the amount of $4,061.85 as of April 25, 2014, together with interest from and after April 25, 2014.

54. Pursuant to Section 12.6 of the Loan Agreement and Section 8(g) of the Security Agreement, Defendant shall reimburse Plaintiff "for any reasonable costs and attorneys' fees incurred by Plaintiff in connection with the enforcement or preservation of any rights or remedies" under the Loan Agreement "or any other document executed in connection with" the Loan Agreement.

55. Plaintiff has incurred attorneys' fees and expenses in connection with collecting on the Note, and its attorneys' fees and expenses continue to accrue.

56. As a direct and proximate result of Defendant's failure and refusal to pay the Revolving Line of Credit, Plaintiff has been damaged in the principal sum of $750,000.00 on the Revolving Line of Credit; together with interest in the amount of $5,520.42 as of April 25, 2014, together with interest from and after April 25, 2014; and together with attorneys' fees and costs of collection, such as are on account with the undersigned counsel for Plaintiff at the time of entry of judgment hereon.

57. As a direct and proximate result of Defendant's failure and refusal to pay the Term Loan, Plaintiff has been damaged in the principal sum of $1,720,000.00 on the Term Loan; together with interest in the amount of $4,061.85 as of April 25, 2014, together with interest from and after April 25, 2014; and together with attorneys' fees and costs of collection, such as are on account with the undersigned counsel for Plaintiff at the time of entry of judgment hereon.

21651027v1

## COUNT II- BREACH OF LEASING NOTE

58. Plaintiff realleges each and every allegation contained in paragraphs 1 through 57 above, as though fully set forth herein.

59. On May 15, 2013, Defendant executed and delivered to Plaintiff a Note & Security Agreement ("Leasing Note") evidencing a loan given to Defendant in the principal amount of $182,622.50. A true and accurate copy of the Leasing Note is attached hereto and incorporated herein by reference as **Exhibit 5**.

60. Pursuant to the section of the Leasing Note entitled "Security Interest", Plaintiff holds a first priority and perfected security interest in a tractor owned by Defendant and identified as "2012 DGN LGP Tractor" with the serial number 0GHS01134.

61. Pursuant to Section 5.1 of the Loan Agreement, the Collateral which secures the Loan Agreement also secures "all other present and future obligations of" Defendant to Plaintiff. As such, the Collateral that secures the Loan Agreement also secures the Leasing Note.

62. Paragraphs 1, 3, 7, 8, and 9 of the section of the Leasing Note entitled "Events of Default" all define an "event of default" under the Leasing Note as a default or failure to pay, by Defendant, on any other present or future obligations of Defendant to Plaintiff.

63. Pursuant to the section of the Leasing Note entitled "Remedies", Defendant shall reimburse Plaintiff all its

> …expenses of retaking, holding, preparing for sale, selling or otherwise dealing with or disposing of the Collateral, including attorney's fees in the amount of 15% of the outstanding principal balance of and interest on the Indebtedness (but not to exceed the amount of attorneys' fees actually incurred) if collection is by or through an attorney at law.

64. Plaintiff has performed all conditions precedent to enforcement of the Leasing Note.

21651027v1

65. Pursuant to Paragraphs 1, 3, 7, 8, and 9 of the section of the Leasing Note entitled "Events of Default", Defendant breached the Leasing Note by defaulting under the Loan Agreement.

66. Pursuant to the section of the Leasing Note entitled "Remedies", upon the event of default, all indebtedness is immediately due.

67. Defendant was notified by Plaintiff of the foregoing breach and default, and the entire indebtedness under the Leasing Note is immediately due to Plaintiff.

68. As of April 25, 2014, there was $154,236.20 in principal due and owing to Plaintiff on the Leasing Note and a prepayment fee pursuant to the section of the Leasing Note entitled "Mandatory Prepayment" in the amount of $4,627.09.

69. The Leasing Note default is still in existence and not cured.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bank of American, N.A., respectfully requests:

1. Judgment against Defendant as follows:

    a. In the principal sum of $750,000.00 on the Revolving Line of Credit; together with interest in the amount of $5,520.42 as of April 25, 2014; together with interest from and after April 25, 2014;

    b. In the principal sum of $1,800,434.00 on the Term Loan Revolving Line of Credit; together with interest in the amount of $4,061.85 as of April 25, 2014; together with interest from and after April 25, 2014;

    c. In the principal sum of $154,236.20 on the Leasing Note; together with a prepayment fee of $4,627.09; together with interest in the amount of $4,627.09 as of April 25, 2014; together with interest from and after April 25, 2014;

    d. Attorneys' fees and costs of collection, such as are on account with the undersigned counsel for Plaintiff at the time of entry of judgment hereon; and

    e. post-judgment interest as provided by law on the total amount as determined by this Court of the prayer for relief on sub-paragraphs a-c above until paid;

2. The appointment of a receiver to take control of the collateral secured by the Loan Agreement, Security Agreement, and Leasing Note;

3. The issuance of a temporary restraining order, preliminary injunction and/or permanent injunction:

    a. Enjoining Defendant and its officers, agents, servants, employees, trustees, attorneys and other persons who are in active concert or participation with anyone of the Defendant, its officers, agents, servants, employees, and attorneys from:

        i. Moving, selling, leasing, agreeing to sell or lease, or otherwise disposing of any collateral secured by the Loan Agreement, Security Agreement, and Leasing Note;

        ii. Making any loan payments, contributions, conveyances or transfers of any kind to or from the ESOP;

        iii. Making any loan payments, contributions, conveyances or transfers of any kind on the Seller Notes or to or from the Shareholders; and

        iv. Making any loan payments, contributions, conveyances or transfers of any kind to Defendant;

    b. Ordering Defendant to provide cash budget reports to Plaintiff on a weekly basis and requiring Defendant to provide Plaintiff with immediate access to

> Defendant's property and all of the collateral in order for Plaintiff to conduct a field exam; and

4. For such other and further relief as the Court deems just and proper.

Case: 4:14-cv-00809-JAR   Doc. #:  1   Filed: 04/28/14   Page: 13 of 15 PageID #: 13

21651027v1

## **VERIFICATION**

STATE OF MISSOURI     )
                      ) ss.
COUNTY OF Clay        )

    Brandi Russell, being first duly sworn upon his oath, verifies the above Complaint, and states that the factual allegations contained herein are true and correct to the best of his knowledge and belief.

                                                                       _____
                                                                       Brandi Russell, Vice President
                                                                       on behalf of Bank of America, N.A.,
                                                                       Plaintiff

Subscribed and sworn to before me on this 28th day of April, 2014.

                                                                       _Donna J. Rowell_____
                                                                       Notary Public

My Commission Expires:

Feb 27, 2018

```
DONNA J. ROWELL
Notary Public - Notary Seal
State of Missouri
Commissioned for Clay County
My Commission Expires: Feb. 27, 2018
14845679
```

Respectfully submitted,

**LATHROP & GAGE LLP**


By: /s/ Michael A. Clithero
     Michael A. Clithero  #31402MO
     Alicia M. Kerr, #63931MO
     Pierre Laclede Center
     7701 Forsyth Boulevard, Suite 500
     Clayton, Missouri 63105
     Telephone:  (314) 613-2800
     Telecopier:  (314) 613-2801
     mclithero@lathropgage.com
     akerr@lathropgage.com

     **Attorneys for Plaintiff Bank of America, N.A.**